IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVE P. GREENE,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>CAPITAL ONE BANK and TOREY WHITE, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS<br><br><br><br><br><br>Case No. 2:07-CV-687 TS |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amendment to Claim[1] in which Defendants ask the Court to dismiss Plaintiff's Amended Complaint for failure to state a claim. Plaintiff has not responded to the Motion and the time for his response has long since passed. Having carefully considered the record before it, the Court will grant Defendants' Motion with respect to Plaintiff's claim under the Fair Credit Reporting Act ("FCRA")[2] and deny Defendants' Motion with respect to Plaintiff's state law defamation claim. Additionally, as this Order resolves the federal questions in this case, the Court will remand Plaintiff's defamation claim to the Justice Court of North Logan City.

---

[1] Docket No. 17.

[2] 15 U.S.C. § 1681 et seq.

1

I.  BACKGROUND

This case involves a dispute between pro se Plaintiff Steve Greene and Defendants Capital One Bank and Tory White (a litigation specialist at Capital One) regarding information found on Plaintiff's credit report.  Plaintiff initially filed his Complaint in the Justice Court of North Logan City.  Defendants then removed the action to this Court and filed a Motion to Dismiss[3] for failure to state a claim.  Magistrate Judge Wells issued a Report and Recommendation, which the Court adopted in full, recommending that the Motion to Dismiss be denied without prejudice and that Plaintiff be given an opportunity to amend his Justice Court Complaint to comply with the pleading standards of the Federal Rules of Civil Procedure.

On January 2, 2008, Plaintiff filed an Amended Complaint[4] in which he alleges a violation of the FCRA and a common law defamation claim.  Defendants then filed the Motion to Dismiss Plaintiff's Amendment to Claim currently before the Court.

The following is a summary of the allegations in Plaintiff's Amended Complaint: In June 2004, Capital One agreed to accept $1,000 from Plaintiff as settlement in full of the amount owing on Plaintiff's Capital One account.  In February 2006, Plaintiff discovered that Capital One was erroneously reporting to "the Credit Bureaus that [Capital One] had written off over $3,000."[5]  Plaintiff contacted the "Credit Bureaus" and Capital One to dispute this information. "The Credit Bureaus responded that Capital One had 'verified' this information to be correct."[6]

---

[3]Docket No. 6.

[4]Docket No. 16.

[5]*Id.* at 1.

[6]*Id.* at 2.

Finding no relief, in December 2006, Plaintiff filed suit in the small claims court of the Sixth Judicial District of the State of Idaho for "Breach of Contract, defamation of Character, and slander."[7] Default judgment in the amount of $4,039.88 was entered in favor of Plaintiff in February 2007 after Capital One failed to respond. Shortly thereafter, Defendant White offered to settle Plaintiff's claim for a reduced amount and a promise "to remove [the negative information] from the tradeline."[8] Plaintiff rejected this offer and informed Defendant White that Plaintiff would soon "be applying for credit and if it wasn't corrected, then they would be back at square one."[9]

Around the beginning of April 2007, Plaintiff attempted to purchase a truck and was denied credit. Plaintiff then filed the present action in August 2007, alleging that Capital One "violated the FCRA[] by knowingly and intentionally reporting erroneous information to the Credit Reporting Agencies" and defamed Plaintiff by "continuing to report the incorrect information" in order "to willfully, intentionally and maliciously, injure [his] credit worthiness."[10]

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]*Id.* at 4.

sufficient to state a claim for which relief may be granted."[11]  In order to withstand a Rule 12(b)(6) motion, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[12]  However, "[d]ismissal of a pro se complaint under Rule 12(b)(6) for failure to state a claim 'is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'"[13]  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[14]  The Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to plaintiff," but may disregard "conclusory allegations without supporting factual averments."[15]

### III. DISCUSSION

a. FCRA Claim

Defendants argue that the Amended Complaint fails to state an FCRA claim because Plaintiff does not allege that Capital One received statutory notice from a consumer reporting agency regarding Plaintiff's dispute.

The purpose of the Fair Credit Reporting Act is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit,

---

[11]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[12]*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007) (dismissing complaint where the plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[13]*Sparks v. Foster*, 241 Fed. Appx. 467, 470-71 (10th Cir. 2007) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

[14]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[15]*Id.* at 1109-1110.

personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the [Act]."[16]  "Accordingly, the FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."[17]  In this case, Plaintiff's allegations relate to Capital One's role as a furnisher of information.[18]

The responsibilities of furnishers of information under the FCRA are set forth in 15 U.S.C. § 1681s-2.  Section 1681s-2 divides these duties into two categories: (1) "Duty of furnishers of information to provide accurate information" under subsection (a); and (2) "Duties of furnishers of information upon notice of dispute" under subsection (b).  The duties imposed by subsection (a) are enforceable only by the Federal Trade Commission and other designated government agencies.[19]  In other words, Congress has explicitly precluded any private right of action relating to the duties imposed on furnishers of information under § 1681s-2(a).

Subsection (b) imposes a number of duties on furnishers of information upon receiving notice from a consumer reporting agency of "a dispute with regard to the completeness or accuracy of any information provided . . . to [the agency]," including: (1) to conduct an investigation of the disputed information; (2) to review the information regarding the dispute provided by the consumer reporting agency; (3) to report the results to the consumer reporting

---

[16] 15 U.S.C. § 1681(b).

[17] *Whisenant v. First Nat'l Bank*, 258 F. Supp. 2d 1312, 1316 (N.D. Okla. 2003).

[18] Docket No. 16, at 3 ("Defendant inaccurately reported information to the Credit Bureaus, damaging the Plaintiff's Credit worthiness.").

[19] 15 U.S.C. § 1681s-2(d).

agency; (4) to report any incomplete or inaccurate information to other consumer reporting agencies; and (5) to correct or remove the inaccurate or incomplete information.[20]

However, these duties arise only when the furnisher of information receives notice of a dispute from a consumer reporting agency pursuant to § 1681i(a)(2).[21] Upon receiving notice of a consumer dispute, a consumer reporting agency is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer."[22] Within five days after receiving notice of the dispute, the consumer agency must notify the furnisher of the disputed information.[23] The furnisher of information must then fulfill its § 1681s-2(b) duties before the expiration of the consumer reporting agency's 30-day period.[24] Importantly, § 1681s-2(b) duties do not arise when the consumer himself gives notice of a dispute directly to the furnisher of information.[25]

In this case, Plaintiff does not explicitly allege that Capital One received notice of his dispute regarding the alleged false information from a consumer reporting agency. Plaintiff does allege that before filing the December 2006 lawsuit, he reported the dispute both to the "Credit Bureaus" and to Capital One and that the "Credit Bureaus responded that Capital One had

---

[20]*Id.* at § 1681s-2(b)(1)(A)-(E).

[21]*Id.* at § 1681s-2(b)(1); *Whisenant*, 258 F. Supp. 2d at 1316.

[22]15 U.S.C. § 1681i(a)(1)(A).

[23]*Id.* at § 1681i(a)(2)(A).

[24]*Id.* at § 1681s-2(b)(2).

[25]*Aklagi v. Nationscredit Fin. Servs.*, 196 F. Supp. 2d 1186, 1193 (D. Kan 2002).

'verified' [the alleged false information] to be correct."[26] However, even assuming these allegations properly plead that Capital One received a § 1681i(a)(2) notice,[27] such notice was received by Capital One before Plaintiff filed the December 2006 lawsuit. It follows that any § 1681s-2(b) duties related to this notice also arose and were breached by Capital One, if at all, prior to the filing of the December 2006 lawsuit. Although it is not clear what the precise allegations of the December 2006 lawsuit were, it is clear that they were related to Capital One's reporting of the alleged false information prior to December 2006. Accordingly, any claims Plaintiff might have had relating to Capital One's alleged breach of its § 1681s-2(b) duties arising from notice provided before the December 2006 lawsuit were merged into the default judgment obtained by Plaintiff in February 2007 and cannot form the basis for a cause of action in the present case in which Plaintiff complains of being denied credit in April 2007 due to Capital One's continuing to report the alleged false information.

In the absence of a new § 1681i(a)(2) notice, any post-December 2006 conduct by Defendants violated only § 1681s-2(a), which requires furnishers of information to refrain from

---

[26]Docket No. 16, at 2.

[27]Courts are divided as to the pleading requirements with respect to the § 1681i(a)(2) notice that gives rise to § 1681s-2(b) duties. *See* J. G. Wahlert, *Liability in Private Action Under Fair Credit Reporting Act § 623(b) (15 U.S.C.A. § 1681-2(b)) Governing Duties of Furnishers of Credit Information*, 10 A.L.R. Fed. 2d 605, at §§ 6, 7 (2006) (collecting cases). Some courts require a consumer plaintiff to affirmatively allege that the furnisher of information received the notice required under § 1681i(a)(2) from a consumer reporting agency. *See, e.g.*, *Densmore v. General Motors Acceptance Corp.*, 2003 WL 2220177, at *2 (N.D. Ill. Sep. 25, 2003) (holding allegation "upon information and belief" that furnisher of information received statutory notice did not satisfy the pleading requirement). Other courts have held that an allegation claiming the consumer plaintiff notified both the consumer reporting agency and the furnisher of information is enough to satisfy the pleading requirement because whether the statutory notice was actually given is outside the plaintiff's knowledge at the pleading stage. *See, e.g.*, *Sullivan v. Equifax*, 2002 WL 799856, at *2 n.3 (E.D. Pa. Apr. 19, 2002) (allowing § 1681s-2(b) claim to proceed without explicit notice allegation).

reporting "information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate,"[28] and to "correct and update" information previously provided that is "not complete or accurate."[29]  However, as explained above, there is no private right of action for breach of the duties found in § 1681s-2(a).

Despite a full round of briefing on Defendants' first Motion to Dismiss,[30] which thoroughly outlined the notice requirement, Plaintiff does not allege in the Amended Complaint that Defendants received a § 1681i(a)(2) notice with respect to his post-December 2006 claims. Instead, Plaintiff alleges that *he* notified Defendants of the continuing dispute.  However, this does not give rise to § 1681s-2(b) duties.  Plaintiff was given a reasonable opportunity to amend, but failed to cure this deficiency.  Therefore, the Court will grant Defendants' Motion to Dismiss Plaintiff's FCRA claim in the Amended Complaint for failure to state a claim.

In reaching this decision, the Court notes that injunctions are unavailable to consumers under the FCRA, leaving them without the ability to require a furnisher of information to remove or modify erroneous credit information.[31]  Theoretically, this could allow a recalcitrant furnisher of information to refuse to correct or remove erroneous information even after entry of judgement against it for breach of its § 1681s-2(b) duties, forcing the consumer to repeat the dispute resolution process outlined in the FCRA.  It is certainly not beyond belief that a furnisher

---

[28] 15 U.S.C. § 1681s-2(a)(1)(A).

[29] *Id.* at § 1681s-2(a)(2).

[30] Docket No. 6.

[31] *See, e.g.*, *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 268-69 (5th Cir. 2000) ("Congress vested the power to obtain injunctive relief solely with the FTC.").

of information might use the false tradeline as a club in negotiating down a judgment, as may have happened in this case.[32]

However, a consumer is not without redress in the event that the furnisher of information refuses to change the erroneous information post-judgment.  A consumer may repeat the process of disputing the erroneous information with the consumer reporting agency, armed with a favorable judgment as proof of his claim.[33]  Should that process fail, the consumer could again seek redress in court, with the specter of punitive damages looming,[34] against the consumer reporting agency or the furnisher of information, or both, depending on whether a § 1681i(a)(2) notice was given.[35]  Furthermore, administrative agencies are tasked with the enforcement of § 1681s-2(a), the duties of which would surely be violated in such scenario.[36]

More important to the disposition of this case, the fulfillment of the duties under § 1681s-2(b) is a discreet event that occurs after receiving statutory notice.  Section 1681s-2(b) does not create ongoing duties comparable to those imposed under § 1681s-2(a).  Thus, in this case, the default judgment truly did place Plaintiff "back at square one," requiring him to repeat the

---

[32]*See* Docket No. 16, at 2.

[33]15 U.S.C. § 1681i(a)(1).  A consumer reporting agency is not required to conduct a reinvestigation that is "frivolous or irrelevant." *Id.* at § 1681i(a)(3)(A).  Under this provision, "[t]he agency is not required to repeat a reinvestigation that it has previously conducted simply because the consumer reiterates a dispute about the same item of information, *unless the consumer provides additional evidence that the item is inaccurate or incomplete, or alleges changed circumstances*."  Commentary on the Fair Credit Reporting Act, 16 C.F.R. Pt. 600, App., at 611-11 (emphasis added).  Thus, armed with a judgment, the consumer would be entitled to a new reinvestigation by the consumer reporting agency.

[34]15 U.S.C. § 1681n(a)(2).

[35]*Id.* at §§ 1681n, 1681o.

[36]*Id.* at § 1681s(a).

procedure outlined in the FCRA before bringing suit against Defendants under § 1681s-2(b) for claims arising after December 2006.

      b.  Defamation Claim

Defendants argue that Plaintiff's state law claim for defamation is preempted by the FCRA and should be dismissed.

The FCRA contains two preemption provisions that arguably apply to Plaintiff's defamation claim: 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e).  According to § 1681t(b)(1)(F), "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  This Section has been called an "absolute immunity" provision as it completely insulates a furnisher of information against state causes of action.[37]

      Section 1681h(e) provides that

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.[38]

---

[37] *See Aklagi*, 196 F. Supp. 2d at 1194-95.

[38] 15 U.S.C. § 1681h(e) (emphasis added).

This Section provides "qualified immunity" only from certain types of common law claims not involving allegations of "malice or willful intent to injure."[39]

District courts have struggled to reconcile these seemingly contradictory provisions, resulting in three different approaches to deciding which provision applies to a given state law claim: (1) the "total preemption" approach, (2) the "temporal" approach, and (3) the "statutory" approach.[40] Neither the Tenth Circuit, nor any other circuit court, has decided this issue.

Courts applying the total preemption approach hold that by virtue of its plain language, § 1681t(b)(1)(F) controls the preemption question with regard to all state law causes of action, including defamation, against a furnisher of information relating to its duties under § 1681s-2(b).[41] However, this approach has been criticized because it renders § 1681h(e) completely meaningless with regard to furnishers of information.[42]

Under the temporal approach, whether § 1681t(b)(1)(F) or § 1681h(e) applies to a state law defamation claim depends on whether the claim arose before or after the furnisher of information received notice of the false information.[43] The temporal approach is based on the requirement under § 1681s-2(a)(1)(A) that furnishers of information refrain from furnishing "any

---

[39] *See Aklagi*, 196 F. Supp. 2d at 1194-96.

[40] *Barnhill v. Bank of Am.*, 378 F. Supp. 2d 696, 699 (D.S.C. 2005); *see also* Tracy Bateman Farrell, *Preemption of State Law by Fair Credit Reporting Act*, 8 A.L.R. Fed. 2d. 233 (2006) (collecting cases and outlining the split of authority).

[41] *See, e.g., Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002) ("The Court finds that federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information.").

[42] *See Barnhill*, 378 F. Supp. at 699-701.

[43] *See, e.g., Aklagi*, 196 F. Supp. 2d at 1194-96 (holding that claims arising during period before furnisher of information received notice of dispute were governed by § 1681h).

information relating to a consumer to any consumer reporting agency if [the furnisher of information] knows or has reasonable cause to believe that the information is inaccurate." Thus, as soon as the furnisher of information has notice of a consumer dispute, its duties under § 1681s-2 attach and the preemption provision in § 1681t(b)(1)(F) applies. The temporal approach has been criticized because it allows the more general provision, § 1681t(b)(1)(F), to control the more specific provision, § 1681h(e).[44] In other words, § 1681h(e) explicitly deals with common law claims and makes no reference to notice of a dispute received by the furnisher of information. Yet, application of the temporal approach would preempt common law claims after the furnisher of information receives notice of the dispute.

Courts applying the statutory approach have held that § 1681t(b)(1)(F) applies to state statutory claims whereas § 1681h(e) applies to certain state common law claims.[45] This approach is based on the language of § 1681h(e), which explicitly limits the scope of its application to claims "in the nature of defamation, invasion of privacy, or negligence." The specific application of § 1681h(e) to these common law claims is contrasted to the more general application of § 1681t(b)(1)(F). Thus, "[t]he more specific statute, § 1681h(e), which deals only with state common law causes of action, is unaffected by the more general statute, § 1681t(b)(1)(F)."[46] Moreover, § 1681t(b)(1)(F) makes two exceptions to its general preemptive effect, both for state

---

[44] *Barnhill*, 378 F. Supp. 2d at 702.

[45] *See, e.g.*, *id.* at 703-04 ("The statutory approach construes § 1681t as preempting only state statutory causes of action, with § 1681h(e) preempting some state common law causes of action.").

[46] *Id.* at 703.

*statutes*,[47] but makes no reference to common law claims, solidifying the theory that Congress intended § 1681t(b)(1)(F) to deal with statutory claims and § 1681h(e) to deal with common law claims.[48]  Notably, the statutory approach has been criticized for "read[ing] an element into § 1681t(b)(1)(F) that its text does not contain-*i.e.*, applicability to statutory claims only."[49]

As Plaintiff's Amended Complaint clearly alleges that Defendants continued to furnish the alleged false information "to willfully, intentionally and maliciously, injure [his] credit worthiness,"[50] the Court must decide which of the above approaches to employ to Plaintiff's defamation claim.

Having carefully considered the statutory language and the caselaw interpreting it, the Court will apply the statutory approach, finding it to be the most well-reasoned of the three approaches.  Although the statutory approach does not give effect to the sweeping language of § 1681t(b)(1)(F), § 1681h(e) provides the more specific and controlling rule with regard to defamation claims, allowing them to proceed where they properly allege willful or malicious intent to injure.  Adopting the total preemption approach would require the Court to entirely ignore § 1681h(e).  Adopting the temporal approach would eliminate application of § 1681h(e) after the furnisher of information receives notice of the dispute, a limitation that does not appear in the text of that section.  Of course, the same argument can be made regarding application of

---

[47]*See* 15 U.S.C. § 1681t(b)(1)(F)(i)-(ii) (excepting "section 54A(a) of chapter 93 of the Massachusetts Annotated Laws" and "section 1785.25(a) of the California Civil Code" from application of § 1681t(b)(1)(F)).

[48]*Barnhill*, 378 F. Supp. 2d at 703.

[49]*See Kane v. Guar. Residential Lending*, 2005 WL 1153623, at *9 (E.D.N.Y. May 16, 2005).

[50]Docket No. 16, at 4.

the statutory approach, which arguably reads in a limitation with respect to certain common law actions into the text of § 1681t(b)(1)(F).  However, the Court cannot ignore the language of § 1681h(e), which explicitly declares its application to "any action or proceeding in the nature of defamation, invasion of privacy, or negligence."  Accordingly, the Court will apply § 1681h(e) to Plaintiff's defamation claim as a specific exception to the general rule under § 1681t(b)(1)(F).  As Plaintiff has sufficiently alleged that Defendants acted with "malice or willful intent to injure" him, Plaintiff's defamation claim is not preempted under § 1681h(e) and Defendants' Motion to Dismiss must be denied.

Finally, as this Order disposes of Plaintiff's FCRA claim—which served as the basis for federal question jurisdiction in this case—and as Plaintiff's state law defamation claim is still in its infancy and presents no independent basis for subject matter jurisdiction,[51] the Court will decline to further exercise supplemental jurisdiction over the defamation claim and will remand that claim to the Justice Court of North Logan City.[52]

## IV.  CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendants' Motion to Dismiss Plaintiff's Amendment to Claim [Docket No. 17] is GRANTED with respect to Plaintiff's FCRA claim and DENIED with respect to Plaintiff's defamation claim.  It is further

ORDERED that Plaintiff's defamation claim is REMANDED to the Justice Court of North Logan City.  It is further

---

[51] As the case originated in justice court, it surely does not meet the amount in controversy requirement for diversity jurisdiction.

[52] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); 28 U.S.C. § 1447(c).

ORDERED that the Clerk of the Court close this case.

DATED April 23, 2008.

                BY THE COURT:

                _____
                TED STEWART
                United States District Judge